OPINION
{¶ 1} This is an accelerated calendar appeal taken from the final judgment of the Mentor Municipal Court, wherein appellant, Matthew J. Krejsa, pled no contest to operating a vehicle with a prohibited concentration of alcohol after his motion to suppress was denied.
 {¶ 2} The following facts were adduced at the suppression hearing. On the evening of July 4, 2001, Eugene L. Scott ("Mr. Scott") was at a halt in traffic resulting from a fireworks display. During this time, Mr. Scott witnessed appellant and another occupant in a landscaping-type vehicle, "swearing *** at the police officer directing traffic, *** [and] [t]hey were slurring their words like they were intoxicated." In response to the situation, Mr. Scott reported his observation to a nearby police officer:
 {¶ 3} "Q. [by prosecuting attorney] Okay. What did you do?
 {¶ 4} "A. Finally, the officer let us go.
 {¶ 5} "When I got near the officer, he was probably four car lengths ahead of where, you know, from where I was parked.
 {¶ 6} "When I came up to the patrolman, I stopped and I told him, you know, what happened, and I thought that the two individuals were intoxicated.
 {¶ 7} "Q. What made you come to that conclusion?
 {¶ 8} "A. Just the way they were acting and they were slurring their words."
 {¶ 9} While directing traffic after a fireworks display, Patrolman Greco of the Mentor Police Department received a dispatch giving a description of a landscaping-type vehicle and advising him of a "traffic complaint stating that another motorist was identifying another vehicle as having an intoxicated driver, yelling obscenities towards — — out of the vehicle, as well as drinking while he was in the vehicle."
 {¶ 10} When Patrolman Greco observed a vehicle matching the description, he approached this vehicle on foot and "asked the driver what his problem was." According to the police officer, as soon as appellant began to speak, he could smell an odor of alcohol emanating from the vehicle. As a result, Patrolman Greco "[had appellant] pull over to the side by the bike path and stopped him there." Appellant was subsequently arrested for operating a vehicle while under the influence of alcohol, in violation of R.C. 4511.19(A)(1); and operating a vehicle with a prohibited concentration of alcohol of .177, in violation of R.C.4511.19(A)(3).
 {¶ 11} After entering a plea of not guilty to the charges, appellant filed a motion to suppress on September 4, 2001. According to appellant, since Patrolman Greco did not personally see appellant violate any traffic law and did not obtain a warrant to detain appellant, the investigatory stop was unconstitutional. Upon consideration, the trial court denied appellant's motion to suppress on September 24, 2001.
 {¶ 12} Thereafter, appellant entered a plea of no contest to operating a vehicle with a prohibited concentration of alcohol, in violation of R.C. 4511.19(A)(3), while the remaining charge was dismissed. Appellant's sentence was stayed pending the outcome of this appeal.
 {¶ 13} It is the denial of his motion to suppress from which appellant appeals, submitting a lone assignment of error for our consideration. Under this assignment of error, appellant contends that the tip provided by Mr. Scott was insufficient to create reasonable suspicion to justify the stop of appellant's vehicle. According to appellant, Mr. Scott merely observed appellant and his passenger yelling, using foul language, and slurring their words. While this conduct may have been offensive, appellant suggests that there was no evidence that he was breaking the law. Appellant further points out that since the dispatch received by Patrolman Greco was factually erroneous, the officer lacked the reasonable suspicion necessary to justify the stop of appellant's vehicle.[1]
 {¶ 14} In analyzing the appropriateness of effectuating an investigative stop based on an informant's tip, the Supreme Court of Ohio stated the following:
 {¶ 15} "[W]here an officer making an investigative stop relies solely upon a dispatch, the state must demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity.
 {¶ 16} "***
 {¶ 17} "Where *** the information possessed by the police before the stop stems solely from an informant's tip, the determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip. *** The appropriate analysis, then, is whether the tip itself has sufficient indicia of reliability to justify the investigative stop. Factors considered `highly relevant in determining the value of [the informant's] report' are the informant's veracity, reliability, and basis of knowledge." (Emphasis and citations omitted.)Maumee v. Weisner (1999), 87 Ohio St.3d 295, 298-299.
 {¶ 18} In the instant matter, it is undisputed that Mr. Scott was an identified citizen informant, and as such, was highly reliable.Weisner at 300. Furthermore, Mr. Scott's tip was quite reliable and credible because it was based on his own personal observation of appellant's behavior. Weisner at 302. Immediately upon observing appellant's rowdy behavior, Mr. Scott described them to a nearby officer who relayed the tip to dispatch. It is reasonable to infer that Mr. Scott reported his observations to a police officer because he may have considered appellant's behavior to be a safety concern. Under the totality of these circumstances, Mr. Scott's tip was trustworthy, reliable, and due significant weight.
 {¶ 19} For these reasons, Mr. Scott's tip afforded Patrolman Greco reasonable suspicion justifying the initial encounter with appellant without the need for independent police corroboration. See, e.g.,Weisner at 302-303. Here, Mr. Scott advised a nearby officer that appellant and another occupant in the vehicle were swearing and yelling, and "thought they were intoxicated because they were slurring their words." As recognized by the Sixth Appellate District, "[s]lurred speech and inappropriate behavior is sufficient to give rise to reasonable suspicion that someone is intoxicated." State v. Adkins (Nov. 17, 2000), 6th Dist. No. E-00-028, 2000 Ohio App. LEXIS 5308, at 5-6.
 {¶ 20} The only fact that makes this case unique is that a portion of the information contained in the dispatch was embellished, as Patrolman Greco was advised that the driver was "drinking while he was in the vehicle." This, however, is of no consequence. If that portion of the dispatch had been omitted, Patrolman Greco would still have had reasonable suspicion to effectuate the stop. Viewing the dispatch in its totality, the immediate purpose of the communication was to advise Patrolman Greco that pursuant to an identified citizen informant's personal observation, a motorist appeared to be intoxicated while operating a motor vehicle.
 {¶ 21} Based on the foregoing analysis, appellant's lone assignment of error is without merit, and the judgment of the trial court is affirmed.
ROBERT A. NADER, J., concurs in judgment only with concurring opinion.
WILLIAM M. O'NEILL, P.J., dissents with dissenting opinion.
[1] Because appellant contests only the alleged stop, we will limit our analysis accordingly.